# IN THE COURT OF APPEALS OF IOWA

No. 24-1106
Filed September 17, 2025

**ROLAND RICARDO ANDERSON,**
　　Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
　　Respondent-Appellee.
_____

　　Appeal from the Iowa District Court for Black Hawk County, Melissa Anderson-Seeber, Judge.


　　Applicant appeals the denial of his application for postconviction relief. **AFFIRMED.**


　　James S. Blackburn, Des Moines, for appellant.

　　Brenna Bird, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee State.


　　Considered without oral argument by Tabor, C.J., and Greer and Buller, JJ.

**GREER, Judge.**

Roland Ricardo Anderson appeals the district court order denying his application for postconviction relief (PCR), arguing he received ineffective assistance from trial counsel. Specifically, he maintains trial counsel provided ineffective assistance by (1) failing to advise him of potential conflicts of interest; (2) failing to pursue a self-defense theory and allowing him to testify; (3) failing to investigate a crime scene video; and (4) failing to strike a juror. We affirm, as Anderson failed to meet his burden to prove ineffective assistance of counsel.

## I.    Facts and Prior Proceedings.

In July 2012, Anderson got into a quarrel at a bar with his then-fiancée, and they were asked to leave. The bar's security guard testified to the following facts. Once outside the bar Anderson struck his fiancée. The security guard intervened, and this resulted in him and Anderson getting into an altercation. The security guard reentered the bar without Anderson. Later, Anderson returned to the bar and went into the restroom. After leaving the restroom, he approached the same security guard and shot at him. The security guard began to flee the bar, and Anderson pursued him, firing four shots in total. The pursuit ended outside of the bar where patrons and a police officer, who happened to be on duty near the bar, stopped Anderson. When the officer apprehended Anderson, he still had the gun used in the shooting in his possession.

At his jury trial, Anderson presented an intoxication defense through an expert in pharmacology who testified that Anderson was so intoxicated that night he was unable to form an intent to murder someone. But the jury convicted Anderson of four counts: attempted murder, a class "B" felony; willful injury causing

bodily injury, a class "D" felony; intimidation with a dangerous weapon, a class "C" felony; and possession of a firearm as a felon, a class "D" felony. Anderson directly appealed, and a panel of our court affirmed his convictions. *See State v. Anderson*, No. 15-1180, 2016 WL 5407954, at *15 (Iowa Ct. App. Sept. 28, 2016). Anderson timely applied pro se for PCR, and he later amended his application through counsel.

At the January 2024 PCR trial, Anderson, who had not testified at the underlying criminal trial, testified on his own behalf, and the PCR court considered the deposition testimony of his trial counsel. On July 3, the district court denied his PCR application. Anderson appeals.[1]

## II.    Scope of Review and Error Preservation.

We typically review a PCR action for errors at law. *Castro v. State*, 795 N.W.2d 789, 792 (Iowa 2011). But when the review implicates a constitutional issue, such as ineffective assistance of counsel, our review is de novo. *See Sothman v. State*, 967 N.W.2d 512, 522 (Iowa 2021). Our determination of whether there is a conflict of interest is a mixed question of law and fact. *State v. McKinley*, 860 N.W.2d 874, 878 (Iowa 2015).

We start with an error preservation issue. In Anderson's second claim, he alleges counsel failed to pursue a self-defense theory and allow him to testify. To the PCR court, Anderson only argued counsel should have pursued a self-defense

---

[1] Anderson raised additional claims in his PCR application, but we only consider the issues properly raised on appeal. *See Aluminum Co. of Am. v. Musal*, 622 N.W.2d 476, 479 (Iowa 2001) ("It is a well-established rule of appellate procedure that the scope of appellate review is defined by the issues raised by the parties' briefs." (cleaned up)).

theory—not the additional claim that Anderson should have testified. And in the PCR court's summary of the issues to consider, the failure to testify was not on the list. The State alleges this part of Anderson's second claim is not preserved, and we agree. "It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal." *Lamasters v. State*, 821 N.W.2d 856, 862 (Iowa 2012) (citation omitted). Because Anderson neither raised the issue related to his right to testify below nor received a ruling on the issue, we need not address it here. Anderson properly preserved error on the rest of his claims, and we proceed to the merits on those claims.

## III.    Analysis.

To prevail on a claim of ineffective assistance of counsel, a claimant must show "(1) counsel failed to perform an essential duty; and (2) prejudice resulted." *State v. Clay*, 824 N.W.2d 488, 495 (Iowa 2012) (citation omitted); *see Strickland v. Washington*, 466 U.S. 668, 687 (1984). "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *State v. Maxwell*, 743 N.W.2d 185, 195 (Iowa 2008) (citation omitted). "If the defendant fails 'to establish either of these elements, we need not address the remaining element.'" *Nguyen v. State*, 878 N.W.2d 744, 754 (Iowa 2016) (citation omitted).

"Under the first prong, we measure counsel's performance against the standard of a reasonably competent practitioner." *State v. Thorndike*, 860 N.W.2d 316, 320 (Iowa 2015) (cleaned up). "It is presumed the attorney performed his or her duties competently, and the claimant must successfully rebut this presumption

by establishing by a preponderance of the evidence that counsel failed to perform an essential duty." *Id.* "Ineffective assistance is more likely to be established when the alleged actions or inactions of counsel are attributed to a lack of diligence as opposed to the exercise of judgment. Improvident trial strategy, miscalculated tactics[,] or mistakes in judgment do not necessarily amount to ineffective counsel." *Lamasters*, 821 N.W.2d at 866 (cleaned up).

To show the second prong of prejudice, "the applicant must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Ledezma v. State*, 626 N.W.2d 134, 143 (Iowa 2001) (cleaned up).

### A. Conflict of Interest.

Anderson first alleges ineffective assistance of counsel because he discovered that his trial counsel had, in three separate matters, previously represented the bar and two individuals, R.M. and W.M.Jr., who he claimed were associated with the bar. Anderson argues each of the examples of concurrent representation resulted in an actual conflict. The PCR court took judicial notice of three court files involving the alleged conflicts and performed the necessary analysis to determine whether a conflict existed in each circumstance. *See State v. Mulatillo,* 907 N.W.2d 511, 519 (Iowa 2018).

In the first matter, Anderson points to trial counsel's representation of R.M., who was a relative of the State's witness, T.M.[2], in Anderson's trial. Trial counsel

---

[2] T.M. was a bartender at the bar the night of the shooting.

represented Anderson from September 2012 until July 2015, and he had represented R.M. in a domestic assault case from January 2012 until April 2012. Because there was no overlap in representation, the PCR court found there was no concurrent representation related to this first matter.

In the second claimed conflict trial counsel again represented R.M. from May 2012 until February 2014, this time as a plaintiff in a dramshop case involving a different bar. Anderson argues this concurrent representation of R.M. resulted in trial counsel having "divided loyalties." But R.M. was not a witness for the State, and Anderson did not present any evidence that R.M. was connected to the events that led to his arrest or how the dramshop matter had any conflict with his criminal defense. The court found no conflict existed related to this concurrent representation, either.

Third, trial counsel represented W.M.Jr. from March 2014 until dismissal of the case in July 2014, during part of the time he represented Anderson. Anderson claims trial counsel's strategy was influenced to protect the bar in some way because W.M.Jr.'s father[3] owned the building where the bar involving the shooting was located.[4] But W.M.Jr. was not a witness in Anderson's case, and counsel's representation of W.M.Jr. involved a liquor license issue for the bar under a different named legal entity. To that point, trial counsel testified he did not have

---

[3] The father was W.M.Sr.

[4] Anderson also argues that he discussed with trial counsel filing a civil suit against the bar and its employees for assaulting him, but trial counsel told him it would not be a successful endeavor. As trial counsel testified, his advice was given before trial counsel represented W.M.Jr. in the later matter, so no conflict was apparent and the strategic decision to not sue in a civil suit was certainly reasonable under these facts where it was clear that Anderson was the shooter.

divided loyalties because by the time he represented W.M.Jr., "[R.M.] was no longer connected to the bar. It changed management/ownership of the bar corporation itself." Trial counsel testified that the legal matters were unrelated and not in conflict with Anderson's defense. We find that Anderson did not establish a conflict because the representation of W.M.Jr. did not concern the same legal entity. *See Nichol v. State*, 309 N.W.2d 468, 470 (Iowa 1981) (finding no conflict of interest where defense counsel's previous representation of the State's "principal witness" on "a wholly unrelated matter d[id] not raise even a remote possibility of conflict").

While the State contends that Anderson failed to prove "there was any conflict of interest *at all*," the State alternatively argues that at minimum Anderson must show "a conflict of interest that adversely affects counsel's performance." *State v. McKinley*, 860 N.W.2d 874, 881 (Iowa 2015) (quoting *Mickens v. Taylor*, 535 U.S. 162, 172 n.5 (2002)). After our review of the record, we agree that Anderson failed to establish that his trial counsel's performance was adversely affected by a conflict of interest. "A conflict does not exist just because one party asserts it does." *Id.* at 880. A common scenario in conflict-of-interest cases involves "an attorney who has represented a defendant or a prosecution witness in the current prosecution or simultaneous civil litigation." *Pippins v. State*, 661 N.W.2d 544, 548 (Iowa 2003) (holding a defense attorney's prior representation of a victim in an unrelated civil case was not a conflict of interest); *State v. Watson*, 620 N.W.2d 233, 241 (Iowa 2000) (holding defense attorney's simultaneous representation of the defendant and a prosecution witness in the same case was an actual conflict of interest).

Anderson failed to establish a conflict of interest arising out of these other representations that would have required trial counsel's disclosure to Anderson, therefore there was no breach of duty by trial counsel. We similarly discern no reasonable probability of a different outcome had counsel performed differently. *See Ledezma*, 626 N.W.2d at 143. We affirm the denial of ineffective assistance of counsel on this claim.

**B. Self-Defense Claim.**

Next, Anderson argues his trial counsel was ineffective by failing to present a theory of self-defense and instead relied on the intoxication theory of defense. Even if the trial counsel's strategy to pursue intoxication over a self-defense theory was a miscalculated tactic, it would not necessarily amount to ineffective assistance of counsel. *See Lamasters*, 821 N.W.2d at 866; *Johnson v. State*, No. 12-0927, 2013 WL 6405158, at *4 (Iowa Ct. App. Dec. 5, 2013) (noting that failure to present a self-defense theory that directly contradicted another theory of defense did not constitute ineffective assistance of counsel). "Selection of the primary theory or theories of defense is a tactical matter." *Schrier v. State*, 347 N.W.2d 657, 663 (Iowa 1984). Reasoned strategic choices by trial counsel are "virtually unchallengeable." *Ledezma*, 626 N.W.2d at 143.

Anderson testified at his PCR trial that he was acting in self-defense and the shooting victim was the aggressor. But trial counsel testified that a self-defense claim would have been in "direct contradiction" of the intoxication claim Anderson put forth. Trial counsel thought there was "just no way to argue both [claims] at the same time." Trial counsel remembered telling Anderson, "We'll lose all credibility with the jury if we go in and say you did this in self-defense or you

didn't do it." We agree with the PCR court that "[w]hile it is clear that Anderson believes he was justified in his actions and wanted to claim self-defense, [trial counsel] considered the defense and ruled it out based on the facts. [Trial counsel's] assessment of that claim is accurate." *See Johnson*, 2013 WL 6405158, at \*4. We find Anderson failed to show trial counsel was ineffective for not pursuing a self-defense theory.

## C. Investigation of Crime Scene Video.

Next, Anderson claims ineffective assistance of counsel because trial counsel failed to investigate surveillance video from the bar the night of the shooting. "Counsel is required to conduct a reasonable investigation or make reasonable decisions that make a particular investigation unnecessary." *Ledezma*, 626 N.W.2d at 145. "[T]he duty to investigate is not unlimited. . . ." *Id.* "The extent of the investigation required in each case turns on the peculiar facts and circumstances of that case." *Schrier*, 347 N.W.2d at 662.

First, no one has located any video that exists. Anderson argues if "there was a video," it would have "hopefully" supported a self-defense claim. Trial counsel testified that he had no recollection of any video, but even if there had been a video, the evidence would likely not have helped Anderson. As trial counsel noted, the shooting occurred in a bar "with at least" twenty people and there were "tons of eyewitness." Anderson did not present a video or proof that a video even existed at his PCR trial, so he cannot show that he was prejudiced by the lack of surveillance video at trial. *Cox v. State*, 554 N.W.2d 712, 715 (Iowa Ct. App. 1996) ("At the postconviction hearing, Cox presented no independent evidence to establish a contrary expert opinion would exist. Absent such proof, he cannot

prove prejudice."). As noted by the PCR court, trial counsel "cannot be faulted for not obtaining evidence that never existed."

Anderson asks us to speculate, without specifics, as to how the trial would have gone differently had trial counsel performed a more comprehensive investigation. In doing so, he failed to establish a reasonable probability that, but for trial counsel's lack of investigation of an alleged video, the trial outcome would have been different. *See Ledezma*, 626 N.W.2d at 143. Thus, Anderson is unable to meet the prejudice prong, and we affirm the PCR court's denial of this claim of ineffective assistance of counsel.

## D. Striking a Juror.

Lastly, Anderson claims that his trial counsel was ineffective for failing to strike a juror, alleging this juror "all but said the defense that [trial] counsel would be proposing and putting forward would not work." During jury selection, when trial counsel discussed intoxication and lack of memory, this juror responded, "I still think that you should be held responsible for how you act even if you don't remember it." Trial counsel continued to discuss specific intent, and the juror said she understood, responding, "[J]ust because [Anderson] had a gun doesn't mean he intended to hurt. He could have intended to scare someone. . . . It doesn't necessarily mean that he intended to murder somebody." But the PCR court noted:

> While [the juror] started with an initial thought that a person should be held responsible for an act even if they did not remember it, as [trial counsel] questioned the panel, the juror acknowledged there was more to the analysis. [The juror] never once opined that she had already decided that Anderson was guilty of anything or the "drunk people should be found guilty."

On this issue, Anderson has failed to establish ineffective assistance of counsel resulting in prejudice to him. "The relevant inquiry is whether the juror holds a fixed opinion of the merits of the case and cannot judge the defendant's guilt or innocence impartially." *Koncel v. State*, No. 07-1518, 2009 WL 4842502, at *4 (Iowa Ct. App. Dec. 17, 2009). "It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court." *Irvin v. Dowd*, 366 U.S. 717, 723 (1961). We conclude Anderson's argument to be without merit because he provided no evidence that the juror had a predetermined opinion of his guilt or innocence. *Contrast Koncel*, 2009 WL 4842502, at *4 (holding an applicant failed to establish ineffective assistance of counsel for failure to strike a juror when he provided no evidence that the juror had a fixed opinion on his guilt), *with Dixon v. State*, No. 16-2195, 2018 WL 3471833, at *5 (Iowa Ct. App. July 18, 2018) (finding an applicant established ineffective assistance of counsel when his defense attorney breached a duty by failing to strike a juror that had formed an opinion on the applicant's guilt and there was actual prejudice).

We agree with the PCR court that Anderson did not present evidence that the juror "had already made up her mind about Anderson's guilt." We will not second guess trial counsel's strategic decision to retain the juror given the assurances the juror made during the juror selection process. *See Lamasters*, 821 N.W.2d at 866 (noting that ineffective assistance of counsel is more likely established from the actions of counsel involving "lack of diligence as opposed to the exercise of judgment"). Without more, Anderson failed to show ineffective assistance of counsel on this claim.

**IV.     Conclusion.**

For the reasons outlined above, we agree with the PCR court that Anderson failed to establish trial counsel provided ineffective assistance.

**AFFIRMED.**